UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **MERLIN SAVOIE, JR., ET AL** | * | **CIVIL ACTION** |
| **VERSUS** | * | **NO. 04-1302** |
| **CHEVRON TEXACO, ET AL** | * | **SECTION "L"(1)** |

ORDER AND REASONS

Pending before the Court are Defendants' Motion for Partial Summary Judgment and Defendants' Motion for Summary Judgment. Both motions were taken under submission by the Court on June 22, 2005. For the following reasons, Defendants' Motion for Partial Summary Judgment is GRANTED and Defendants' Motion for Summary Judgment is DENIED.

I.  FACTS

The case arises from injuries allegedly sustained by the Plaintiff, Merlin Savoie, a self-employed commercial fisherman, as he was trawling for shrimp in Bayou Terrebonne, in an area of the Gulf of Mexico between Caillou Island and Timbalier Island, on May 25, 2003. The Plaintiff claims that his nets hung up on a piling. According to Mr. Savoie, he circled the object several times in an attempt to release the piling when his boat struck a submerged object that he believes was a solid production line casing. Mr. Savoie claims severe property damage and personal injury as a result of the incident. Additionally, Jill Savoie, the wife of Merlin Savoie, on her own behalf and on behalf of their minor children, seeks recovery for loss of consortium, service, society, and support. The Plaintiffs initially filed suit in the Thirty-Second Judicial District Court, Parish of Terrebonne, on May 5, 2004.

The Defendants, ChevronTexaco Corporation, Texaco Exploration and Production, Inc., Texaco, Inc., and Chevron USA, Inc. (collectively, "Chevron Texaco"), removed the case to federal court on May 5, 2004.  Chevron Texaco denies liability and alleges that either the incident did not occur or at least it did not occur as suggested by Mr. Savoie.  According to Chevron Texaco, Mr. Savoie cannot prove that Chevron Texaco is responsible for the underwater objects struck by his boat, if Mr. Savoie's boat struck anything at all.

## II.  MOTIONS FOR SUMMARY JUDGMENT

Chevron Texaco brings two motions for summary judgment pursuant to Federal Rule of Civil Procedure 56.  The first is a motion for partial summary judgment dismissing the non-pecuniary damages claims of Jill Savoie and her minor children, Taylor Savoie and Brooke Savoie  The second motion is for summary judgment dismissing the claims of Merlin Savoie and Jill Savoie, individually and on behalf of their minor children.

Summary judgment is only granted if the pleadings, depositions, answers to interrogatories, and admissions, together with affidavits show that there is no genuine issue as to any material fact and that the defendant is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56.  When considering a motion for summary judgment, the Court must "review the facts drawing all inferences most favorable to the party opposing the motion."  *General Universal Systems, Inc. v. Lee*, 379 F.3d 131, 137 (5th Cir. 2004).  If the party moving for summary judgment demonstrates the absence of a genuine issue of material fact "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Willis v. Roche Biomedical Laboratories, Inc.*, 61 F.3d 313, 315 (5th Cir. 1995).

**A.  Defendants' Motion for Partial Summary Judgment**

Chevron Texaco moves for partial summary judgment dismissing the non-pecuniary damages claims of Jill Savoie and her minor children, Taylor Savoie and Brooke Savoie.  The Defendants argue that Mrs. Savoie's non-pecuniary claims are not recoverable under general maritime law.  According to Chevron Texaco, Mr. Savoie's occupation as a commercial fisherman categorizes him as a "seafarer" or "person engaged in maritime trade" and, as such, Mr. Savoie and his relatives are precluded from claiming non-pecuniary damages.

The Plaintiffs respond that Chevron Texaco is seeking to extend a line of cases improperly.  According to the Plaintiffs, in *Yamaha Motor Corp. v. Calhoun*, 516 U.S. 199 (1996), the Supreme Court rejected the argument that claims of non-pecuniary damages are precluded in all maritime cases.  The Plaintiffs maintain that Mr. Savoie is a nonseafarer to whom the Jones Act, 46 U.S.C. §688 et seq.,  is not applicable and who is not covered by the Longshore and Harbor Worker's Compensation Act, 33 U.S.C. §901 et seq.  The Plaintiffs argue that to group Mr. Savoie with Jones Act seamen and longshore workers would incorrectly broaden the true holding in *Yamaha*.  Therefore, the Plaintiffs reason that the claims of Jill Savoie, Taylor Savoie, and Brooke Savoie should be allowed to stand.

**Analysis**

It is undisputed that Merlin Savoie is not a Jones Act seaman and he, therefore, brings his suit under general maritime law.  General maritime law provides a theory of recovery for individuals in admiralty cases who may not have the protection of the Jones Act.  *In re Complaint of Stone Energy Corp.*, 2003 WL 21730621 (E.D. La. 2003).  However, the Supreme Court has recognized circumstances in which general maritime law allows recovery for both

pecuniary and non-pecuniary damages.

Much of the jurisprudence regarding general maritime non-pecuniary damages was developed in cases involving wrongful death claims. In *Moragne v. States Marine Lines, Inc.*, 398 U.S. 375 (1970), the Supreme Court recognized a non-statutory maritime wrongful death claim for the widow of a longshoreman killed while aboard a vessel in state territorial waters. Twenty years later, in *Miles v. Apex Marine Corp.*, 498 U.S. 19 (1990), the Supreme Court held that the mother of a seaman killed in state territorial waters had no claim for non-pecuniary damages under the general maritime law. The *Miles* Court reasoned that, since *Moragne*, there are causes of action for the wrongful death of seamen pursuant to: (1) a statutory claim under the Jones Act based on negligence; and (2) a judge-made, federal common law claim based on unseaworthiness. *Id.* at 29-30. The Court also explained that, "as the Court concluded in *Moragne*, the extension of the [Death on the High Seas Act, 46 U.S.C. §761, et seq.,] wrongful death action to territorial waters furthers rather than hinders uniformity." *Miles*, 498 U.S. at 29. For the sake of uniformity, the *Miles* Court concluded that, since the measure of damages for the death of a seaman under the Jones Act is limited to pecuniary loss, recovery under the non-statutory maritime death remedy also should be limited to pecuniary losses. *Id.* at 33. Since *Miles*, courts have uniformly held that non-pecuniary damages are not available to survivors of seamen under the general maritime law. *See Kelly v. Bass Enterprises Production Co.*, 17 F. Supp. 2d 591. (E.D. La. 1998); *see, e.g.,* 1 Schoenbaum, Admiralty and Maritime Law §5-16 (2d ed. Supp. 1997); Robert Force, *The Curse of Miles v. Apex Marine Corp.: The Mischief of Seeking "Uniformity" and "Legislative Intent" in Maritime Personal Injury Cases*, 55 La. L. Rev. 745 (1995). However, the question still remained whether non-seamen killed or injured in

state territorial waters could recover non-pecuniary damages.

In *Yamaha Motor Corp. v. Calhoun*, the Supreme Court created an exception that allows non-pecuniary damages to be recovered by "nonseafarers" under general maritime law. 516 U.S. 199. The case involved a twelve-year old girl who was killed off the coast of Puerto Rico when a Yamaha wave rider she was operating struck an anchored vessel. The girl's parents sued Yamaha under the maritime law wrongful death action as explained in *Moragne*. The *Yamaha* Court reasoned that, for a nonseafarer, a court could allow such non-pecuniary damages as state law allows under general maritime law in situations where Congress has not legislated statutory remedies. *Id.* In a footnote, the *Yamaha* Court explained that "nonseafarer" refers to "persons who are neither seamen covered by the Jones Act [...] nor longshore workers covered by the Longshore and Harbor Workers' Compensation Act [...]." *Id.* at 205, FN2. However, in the body of the *Yamaha* opinion, the Supreme Court held that where a decedent is not a "seaman, longshore worker, or person otherwise engaged in a maritime trade" and is killed in state waters, federal maritime law as recognized in *Moragne* does not supplant state wrongful death and survival statutes which provide for the recovery of non-pecuniary damages. *Id.* at 202. This language has led several courts, in this Circuit and others, to hold that a "person otherwise engaged in a maritime trade", though not a Jones Act seaman or a longshoreman, is a seafarer precluded from asserting non-pecuniary claims. *See Kelly*, 17 F. Supp. 2d 591.

Whether Mrs. Savoie and her children can maintain a claim for non-pecuniary damages depends on whether Merlin Savoie qualifies as a "seaman, longshore worker, or person otherwise engaged in a maritime trade." As indicated previously, it is undisputed that Mr. Savoie is not a seaman. Additionally, the parties agree that Mr. Savoie does not qualify as a

longshore worker.  Rather, both sides agree that Merlin Savoie is a self-employed commercial fisherman who makes his living trawling for shrimp.  In *In re Gooseneck Trawlers, Inc*., 972 F.Supp. 946 (E.D. N.C. 1997), the court held that a self-employed commercial shrimper who was killed in a collision in state waters was a "person otherwise engaged in a maritime trade", as defined in *Yamaha*.  Thus, the Eastern District of North Carolina would not allow the shrimper's estate to recover non-pecuniary damages and lost future earnings under the North Carolina wrongful death and survival statutes.  The court reasoned that, "[b]y the very nature of his livelihood, [the commercial shrimper] was a 'person otherwise engaged in a maritime trade'," thus, "although [the shrimper] is not covered by a comprehensive federal scheme, the plain defining language in *Yamaha* prevents [the shrimper's estate] from benefitting under the narrow exception for a nonseafarer."  *Gooseneck Trawlers*, 972 F.Supp. at 950.  In *In re Complaint of Stone Energy Corp.*, this District followed North Carolina's analysis and held that self-employed crabbers were sefarers precluded from non-pecuniary recovery because they were covered in *Yamaha*'s "person otherwise engaged in a maritime trade" language.  2003 WL 21730621, at *4.

     In an effort to be consistent with the rulings of this District, and to further the goals of uniformity expressed in *Miles* and *Yamaha*, this Court finds that Merlin Savoie is a seafarer.  His occupation as a commercial fisherman distinguished him from the vacationing jet skier in *Yamaha* and the recreational flatboat fisher that this Court held was a nonseafarer in *Kelly*, 17 F. Supp. 2d 591.  There being no genuine issue of material fact in this regard, the Court finds that the non-pecuniary claims of Jill Savoie, Taylor Savoie, and Brooke Savoie against Chevron Texaco cannot stand.

**B.  Defendants' Motion for Summary Judgment**

Chevron Texaco moves for summary judgment dismissing the claims of Merlin Savoie and Jill Savoie, individually and on behalf of their minor children.  Chevron Texaco argues that it does not own the land or water bottom upon which Mr. Savoie found the piling and allided with the unidentified underwater object.  According to Chevron Texaco, at most, it has mineral leases from the State of Louisiana in the vicinity of the Plaintiff's alleged accident.  Chevron Texaco points to Fifth Circuit precedent requiring a plaintiff to prove that a lessee owns and/or controls an obstruction or underwater debris in order to recover from that lessee.  *See Creppel v. Shell Oil Co.*, 738 F.2d 699 (5th Cir. 1984).  Ultimately, Chevron Texaco asserts that the Plaintiffs bring this case against the Defendants based on bare assertions and speculation solely depending on the proximity of Chevron Texaco wells to the accident scene.  Chevron Texaco claims that, because the area of the incident is essentially a part of the Gulf of Mexico, the piling and underwater obstruction could have come from a variety of sources, such as from a party conducting exploration activities in that area or from one of the many major weather events that have struck that area and blown in debris from nearby docks and camps.  Chevron Texaco concludes that the Plaintiffs' claims must be dismissed because the Plaintiffs have no proof that Chevron Texaco owns or controls the piling or unidentified underwater object nor that the area where the alleged damage occurred was under the exclusive control of Chevron Texaco.

The Plaintiffs respond that there is enough evidence to present material issues of fact as to whether Chevron Texaco is liable for Mr. Savoie's injuries.  Mr. Savoie testified in his deposition that he marked the location of his accident on his vessel's GPS unit, which indicated that there is a Texaco pipeline immediately adjacent to the accident site.  Further, Mr. Savoie

claims that he contacted Chevron Texaco after the incident and Chevron Texaco sent representatives to the site to investigate. According to Mr. Savoie, the Chevron Texaco representatives removed the piling from his vessel and produced photographs showing the piling at the Chevron Texaco camp in the Caillou Island Field. Lastly, the Plaintiffs argue that Chevron Texaco has refused to cooperate in discovery that goes to matters such as the location of Chevron Texaco facilities and pipelines in the area, the presence of other companies operating in the area, the lease giving Chevron Texaco the right to operate in the area, other accidents in the area, and any pipelines or facilities removed by Chevron Texaco in the area.[1]

**Analysis**

The alleged accident in the instant case occurred in navigable waters, giving this Court admiralty jurisdiction over the case. *See Branch v. Schumann*, 445 F.2d 175, 177-178 (5th Cir. 1971). The applicable substantive law is the general maritime law. Mr. Savoie's situation is similar to the scenario presented to the Fifth Circuit in *Creppel v. Shell Oil Company*, 738 F.2d 699 (5th Cir. 1984). In *Creppel*, the plaintiff was shrimping in the Gulf of Mexico when his shrimp boat struck an object and began taking on water. *Id.* at 700. Eventually, the plaintiff's boat sank in an area subject to a Shell mineral lease. *Id.* The plaintiff brought suit against Shell under the belief that his vessel had hit a submerged pipe in Shell's leased area. *Id.* The Fifth Circuit found "no basis in federal maritime law, [ ], for assigning to Shell the duty to clear its maritime leases of all obstructions of which it has notice, regardless of whether it owns or has

---

[1] Plaintiffs' motion to compel on this discovery issue was set for argument before Magistrate Judge Alma Chasez on June 22, 2005. Magistrate Judge Chasez ruled that Chevron Texaco was to supplement its responses to several of the Plaintiffs' Interrogatories and Requests for Production.

placed the obstructions there or maintains them." *Id.* at 701.  The *Creppel* court held that, under federal maritime law, a mineral lessee does not have "a duty to police the waters covered by its lease or to take steps to remove obstructions which it does not own, has not placed there, or does not maintain or control." *Id.* at 702.  Therefore, in order for the Plaintiffs to recover against Chevron Texaco, the Plaintiffs have to offer "direct proof that the object [Mr. Savoie] hit belonged to or was placed in the water by [Chevron Texaco] or was under [Chevron Texaco's] control." *Id.* at 701.

While the Plaintiffs' evidence that Chevron Texaco is responsible for the items that caused Mr. Savoie's injuries may not be sufficient for the Plaintiffs to prevail at trial, the Plaintiffs have shown that there is a genuine issue of material fact as to Chevron Texaco's control of the submerged objects.  Chevron Texaco is correct that the piling and underwater object could have come from many sources.  However, when review[ing] the facts and drawing all inferences most favorable to the Plaintiffs, it is also reasonable to conclude that the objects were owned by or under the control of Chevron Texaco. *General Universal Systems, Inc.*, 379 F.3d at 137 (states that, when considering a summary judgment motion, the Court must "review the facts drawing all inferences most favorable to the party opposing the motion").  For instance, the Plaintiffs point to the deposition of Aaron Champagne, in which Mr. Champagne, a former Chevron Texaco employee, testified that he saw the piling at a Chevron Texaco camp sometime after the accident. (Plaintiffs' Exhibit A, Deposition of Aaron Champagne, pp. 35-36).[2]  Further,

---

[2]In a reply memorandum, Chevron Texaco argues that the Plaintiffs misstate Champagne's testimony regarding the operations in the vicinity of the incident location.  According to Chevron Texaco, the alleged incident occurred between Caillou Island and Timbalier Island, an area south of Caillou Island, which is labeled "Caillou Pass."  Chevron Texaco claims that the Plaintiffs' brief describes the incident location using Mr. Champagne's

Mr. Savoie's claim that he was shown photographs of the piling at the Chevron Texaco camp in the Caillou Island Field is enough to create a genuine issue of material fact regarding responsibility for the objects at issue.

## III.  CONCLUSION

For the aforementioned reasons:

(1) Defendants' Motion for Partial Summary Judgment is GRANTED; and

(2) Defendants' Motion for Summary Judgment is DENIED.


New Orleans, Louisiana, this  21st   day of  July  , 2005.

                                           UNITED STATES DISTRICT JUDGE

---

testimony referring to a different location - an area north of Caillou Island, where Mr. Savoie's boat was located when Mr. Champagne met the Plaintiff to investigate the accident. While this may be true, Chevron Texaco's claim only creates more issues of fact regarding where the alleged accident occurred and what pilings and submerged objects located in that area were under the control or owned by Chevron Texaco, if any.