UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| MERLIN SAVOIE, JR., ET AL | * | CIVIL ACTION |
| VERSUS | * | NO. 04-1302 |
| CHEVRON TEXACO, ET AL | * | SECTION "L"(1) |

ORDER AND REASONS

Pending before the Court is Defendants' Motion for Summary Judgment. The motion was taken under submission by the Court on July 25, 2005. For the following reasons, Defendants' Motion for Summary Judgment is DENIED.

I. FACTS

This case arises from injuries allegedly sustained by the Plaintiff, Merlin Savoie, a self-employed commercial fisherman, as he was trawling for shrimp in Bayou Terrebonne, in an area between Caillou Island and Timbalier Island, on May 25, 2003. The Plaintiff claims that his nets hung up on a piling. According to Mr. Savoie, he injured his back while trying to free the piling from his nets. In addition, after Mr. Savoie removed the piling from his nets and while he was leaving the area, he claims that he further injured himself and his boat when the boat allided with an unidentified submerged object, which he believes was a pipeline. Mr. Savoie claims severe property damage and personal injury as a result of the incident. Additionally, Jill Savoie, the wife of Mr. Savoie, on her own behalf and on behalf of their minor children, sought recovery for loss of consortium, service, society, and support.

The Plaintiffs initially filed suit in the Thirty-Second Judicial District Court, Parish of



Terrebonne, on May 5, 2004. The Defendants, ChevronTexaco Corporation, Texaco Exploration and Production, Inc., Texaco, Inc., and Chevron USA, Inc. (collectively, "Chevron Texaco"), removed the case to federal court on May 5, 2004. Chevron Texaco denies liability and alleges that either the incident did not occur or, at least, it did not occur as suggested by Mr. Savoie. According to Chevron Texaco, Mr. Savoie cannot prove that Chevron Texaco is responsible for the underwater objects that struck by his boat, if Mr. Savoie's boat struck anything at all.

On July 21, 2005, the Court granted the Defendants' Motion for Partial Summary Judgment and dismissed the non-pecuniary claims of Jill Savoie and her minor children. Reviewing all the facts and drawing all inferences in favor of the Plaintiff, the Court, however, denied Chevron Texaco's Motion for Summary Judgment because it found that there was a genuine issue of material fact as to whether Chevron Texaco owned or controlled the objects which Mr. Savoie allegedly struck.

On June 22, 2005, prior to the Court's denial of Chevron Texaco's earlier Motion for Summary Judgment, Magistrate Judge Chasez granted the Plaintiffs' Motion to Compel regarding the Plaintiffs' Request for Production and Interrogatories. Pursuant to this Order, Chevron Texaco provided its mineral lease documents to the Plaintiffs. In addition, the deposition of Wayne Hebert was later taken on July 15, 2005.[1]

## II. MOTION FOR SUMMARY JUDGMENT

Chevron Texaco now brings another motion for summary judgment. Chevron Texaco seeks to have Mr. Savoie's claim dismissed because there is no genuine issue of material fact and

---

[1] Mr. Hebert is a spatial analyst for the land department of Chevron Texaco. As a spatial analyst, Mr. Hebert superimposes the coordinates or metes and bounds of mineral leases onto maps. Hebert Dep. 8:1-21, July 15, 2005.

Chevron Texaco is entitled to judgment as a matter of law.

Chevron Texaco's present motion for summary judgment is similar to its previous motion for summary judgment. Once again, Chevron Texaco argues that it did not own, control, or place the piling or the unidentified submerged object into the water and, as such, is not liable to the Plaintiff.

In its present motion, Chevron Texaco argues that the mineral leases that it produced pursuant to Magistrate Judge Chasez's Order and the deposition of Mr. Hebert render this case ripe for summary judgment. In his deposition, Mr. Hebert testified that at the time of Mr. Savoie's accident Chevron Texaco no longer had a mineral lease in the area where Mr. Savoie claims his accident occurred—either N 29° 4.379 and W 90° 28.129 or N 29° 4.372 and W 90° 28.132. Mr. Hebert testified that Chevron Texaco's mineral lease in this area was abandoned on May 9, 2000, over three years before the accident occurred. In addition, Mr. Hebert testified that he conducted a database search for all pipelines, platforms, and wells located within the 2,000 foot radius of the alleged accident locations and only found a 24-inch pipeline owned by Poseidon Oil Pipeline Company, L.L.C. and Well No. 534, which was plugged and abandoned in July 1970.

Based on Mr. Hebert's testimony, Chevron Texaco makes two arguments in support of summary judgment. First, under article 493 of the Louisiana Civil Code, Chevron Texaco argues that the State of Louisiana owned the piling and unidentified submerged object. Accordingly, the State of Louisiana, not Chevron Texaco, is responsible for the injuries suffered by the Plaintiff. Second, Chevron Texaco argues that there is no longer any genuine issue of material fact as to its ownership, control, or placement of the piling and unidentified submerged object.

## III. LAW AND ANALYSIS

Summary judgment is only granted if the pleadings, depositions, answers to interrogatories, and admissions, together with affidavits show that there is no genuine issue as to any material fact and that the defendant is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56. When considering a motion for summary judgment, the Court must "review the facts drawing all inferences most favorable to the party opposing the motion." *General Universal Systems, Inc. v. Lee*, 379 F.3d 131, 137 (5th Cir. 2004). If the party moving for summary judgment demonstrates the absence of a genuine issue of material fact "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Willis v. Roche Biomedical Laboratories, Inc.*, 61 F.3d 313, 315 (5th Cir. 1995).

The alleged accident in the instant case occurred in navigable waters, giving this Court admiralty jurisdiction over the case. *See Branch v. Schumann*, 445 F.2d 175, 177-78 (5th Cir. 1971). The applicable substantive law is the general maritime law. Under the general maritime law, a party will only be liable for damages resulting from a collision between a boat and an obstruction in navigable waters if that party owned, controlled, or placed the obstruction in the navigable waters. *Creppel v. Shell Oil Co.*, 738 F.2d 699, 701 (5th Cir. 1984). Essentially, liability can only be imposed upon a party if that party had a legal relationship to or responsibility for the obstruction. In this case, Chevron Texaco claims that at the time of the accident it had no legal relationship to or responsibility for the piling and unidentified submerged object.

Chevron Texaco asserts that the application of article 493 to the facts of the present case renders the State of Louisiana, not Chevron Texaco, the owner of the piling and unidentified submerged object. Thus, Chevron Texaco argues that it is not liable to the Plaintiff. Chevron

Texaco's argument cannot prevail.

Article 493 governs the ownership of improvements made on the land of another with his consent.[2] On June 27, 2003, the Louisiana legislature amended the second paragraph of article 493.[3] Under the post-amendment article 493, the owner of the improvements remains the owner of the improvements until such time as the landowner provides written notice by certified mail to the owner of the improvements of his intent to appropriate ownership of the improvements and this notice is received by the owner of the improvements.[4] Under the pre-amendment article 493, the landowner acquired ownership of the improvements if the owner of the improvements failed to remove the improvements within ninety days after his right to keep the improvements on the land ceased.[5]

In amending article 493, the Louisiana legislature expressed its intent to make this amendment retroactive.[6] Accordingly, the Plaintiff argues that the post-amendment article 493 should be applied and, thus, the State of Louisiana cannot be the owner of the piling or unidentified submerged object because it never provided Chevron Texaco with written notice by certified mail of its intent to appropriate ownership.

Chevron Texaco argues that the pre-amendment article 493, which was in effect at the

---

[2] La. Civ. Code Ann. art. 493 (2005).

[3] Act of June 27, 2003, 2003 La. Acts 715.

[4] La. Civ. Code Ann. art. 493.

[5] La. Civ. Code Ann. art. 493 (amended 2003).

[6] H.R. Con. Res. 306, 2004 Reg. Sess. (La. 2004); H.R. Con. Res. 134, 2004 Reg. Sess. (La. 2004).

time of the accident, should be applied and, thus, the State of Louisiana is the owner of the piling and unidentified submerged object because Chevron Texaco failed to remove the piling and unidentified submerged object within ninety days after termination of its mineral lease. In support of its assertion, Chevron Texaco claims that retroactive application of post-amendment article 493 would violate the Due Process Clause of the United States and Louisiana Constitutions because it would deprive the parties of their vested rights and defenses. Therefore, Chevron Texaco claims that post-amendment article 493 cannot constitutionally be applied retroactively.

In essence, Chevron Texaco has asked the Court to find that the retroactive application of post-amendment article 493 would be unconstitutional and, as such, to apply pre-amendment article 493 to this case. Before the Court can reach the constitutionality of the retroactive application of post-amendment article 493 or apply pre-amendment article 493, it must first determine that article 493 is applicable to this case. Based on the evidence presented to the Court thus far, the Court finds that article 493 is not applicable.

Article 493 applies to buildings or other constructions permanently attached to the ground.[7] Chevron Texaco cites three collision cases supporting its contention that the piling and unidentified submerged object are other constructions permanently attached to the ground. In *Melerine v. State ex rel. Dep't of Natural Resources*, the Louisiana Fourth Circuit Court of Appeal found that an oil well casing was an other construction permanently attached to the ground.[8] In *Anderson v. Tenneco Oil Co.*, the Louisiana Fourth Circuit Court of Appeal found

---

[7] La. Civ. Code Ann. Art. 493.

[8] 00-0162, p.1 (La. App. 4 Cir. 11/8/00); 773 So. 2d 831, 833.

that a series of pilings tightly surrounding an oil well casing were other constructions permanently attached to the ground.[9]  Lastly, in *Giorgio v. Alliance Operating Corp.*, the Louisiana Fourth Circuit Court of Appeal again found that a set of pilings adjacent to a large oil production platform were other constructions permanently attached to the ground.[10]  In all three of these cases, the two crucial factors were the fact that the casing and pilings were attached to the ground and were identifiable at the time of accident.

In the present case, the Plaintiff caught a piling in his nets.  It is unknown if the piling was floating adrift in the sea, lying on the water bottom, or stuck in the ground like the pilings in *Anderson* and *Giorgio*.  Accordingly, the Court simply cannot determine if the piling, at the time of the accident, was an other construction permanently attached to the ground.[11]

Regarding the unidentified submerged object, the only evidence presented to the Court as to what it might have been is the Plaintiff's testimony that Mr. Champagne said it was a Chevron Texaco pipeline and the Plaintiff's statement that his GPS unit detected a Chevron Texaco

---

[9] 01-0296, p. 2 (La. App. 4 Cir. 5/22/02); 826 So. 2d 1143, 1147.

[10] 03-1832, p. 1 (La. App. 4 Cir. 11/10/04); 886 So. 2d 1283, 1284.

[11] Even if the piling was stuck in the ground at the time of the accident, the Court wonders how it could be "permanently attached" to the water bottom if it was pulled out by a trawling shrimp boat.  Furthermore, if the piling was unattached to the ground at the time of the accident, the question remains as to how and when it became unattached.  If it became unattached because of the natural flow of the tide, the Court questions if it could be considered "permanently attached."  Also, if it was unattached, when did it become unattached?  Was it before the expiration of Chevron Texaco's mineral lease?  Was it within ninety days after the expiration of Chevron Texaco's mineral lease?  Was it beyond ninety days after the expiration of Chevron Texaco's mineral lease?  At present, there simply is not any evidence to determine whether the piling was attached to the water bottom, let alone how and when it got to the scene of the accident.

pipeline in the vicinity of the accident.[12]  Assuming that the object was a pipeline, there is no evidence as to whether the pipeline was lying on the water bottom, was buried beneath the water bottom, or was attached to the water bottom.  Accordingly, the Court cannot determine if the unidentified submerged object was permanently attached to the ground at the time of the accident.[13]

Therefore, viewing the facts and inferences in the light most favorable to the nonmoving party, the Court finds that there is a genuine issue of material fact as to whether the piling or unidentified submerged object were permanently attached to the water bottom.  Since the Court cannot conclude that article 493 applies, it need not reach the question of whether post-amendment article 493 can constitutionally be applied retroactively.

In addition to its article 493 argument, Chevron Texaco also asserts that this case is now ripe for summary judgment.  Basically, Chevron Texaco argues that the testimony of Mr. Hebert and its mineral leases—the only new evidence presented by either party since Chevron Texaco's previous motion for summary judgment—establishes that there is no genuine issue of material fact as to whether Chevron Texaco owned, controlled, or placed the piling and unidentified submerged object in the water.

In denying Chevron Texaco's previous motion for summary judgement, the Court determined that it was reasonable to conclude that the objects were owned by or under the control

---

[12] Savoie Dep. 171:19-23, Sept. 3, 2004; Savoie Aff. ¶¶ 2-3, June 14, 2005.

[13] While the parties' inability to identify what the submerged object was certainly helps the Plaintiff successfully navigate past Chevron Texaco's Motion for Summary Judgment, the Plaintiff may not be as successful at trial when he must bear the burden of proof.  *See Gele v. Chevron Oil Co.*, 574 F.2d 243, 246-47 (5th Cir. 1978).

of Chevron Texaco when viewing the facts and drawing all inferences most favorable to the Plaintiff. Chevron Texaco's new evidence does not change the Court's conclusion. Even if Chevron Texaco's lease had been terminated three years prior to the accident and the only Chevron Texaco well in the area had been plugged in 1970, there is still a genuine issue as to Chevron Texaco's ownership, control, or placement based upon the following: the Plaintiff testified that Mr. Champagne told him the piling and unidentified submerged object were owned by Chevron Texaco, the Plaintiff testified that his GPS unit indicated that there was a Chevron Texaco pipeline in the vicinity of his accident, Chevron Texaco took possession of the piling after the accident, Mr. Champagne testified that he saw the piling at a Chevron Texaco camp sometime after the accident, and the Plaintiff testified that he was shown photographs of the piling at the Chevron Texaco camp. Although this evidence may not be sufficient for the Plaintiff to prevail at trial, it is enough to create a genuine issue of material fact regarding the responsibility for the objects at issue.

### III. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is DENIED.

New Orleans, Louisiana, this __18th__ day of __October__, 2005.

UNITED STATES DISTRICT JUDGE