**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **MERLIN SAVOIE, JR., ET AL.** | * | **CIVIL ACTION** |
| **VERSUS** | * | **NO. 04-1302** |
| **CHEVRON TEXACO, ET AL.** | * | **SECTION "L"(1)** |

## ORDER AND REASONS

Pending before the Court are the Defendant Poseidon Oil Pipeline Co.'s ("Poseidon") Motion for Summary Judgment (Rec. Doc. 99) and the Defendant Chevron Texaco Corporation's ("ChevronTexaco") Motion for Summary Judgment (Rec. Doc. 101). The motions were taken under submission by the Court on August 16, 2006. For the following reasons, the Defendants' motions are GRANTED.

## I.   BACKGROUND

This case arises from injuries allegedly sustained by the Merlin Savoie, a self-employed commercial fisherman, as he was trawling for shrimp in Bayou Terrebonne, in an area between Caillou Island and Timbalier Island, on May 25, 2003. Mr. Savoie and his family ("Plaintiffs") claim that his nets hung up on a piling, and that he injured his back while trying to free the piling from his nets. In addition, after Mr. Savoie removed the creosote piling from his nets, he alleges that he further injured himself and his boat when the boat allided with an unidentified submerged object as he was leaving the area.

After the accident, Mr. Savoie contacted representatives of ChevronTexaco to report the incident. Prior to May 9, 2000, ChevronTexaco maintained a mineral lease in the vicinity of the alleged accident. ChevronTexaco representatives were sent to investigate the site of the accident

and removed the piling from Mr. Savoie's vessel.[1]  The Plaintiffs alleges that one of these representatives, Mr. Aaron Champagne, told Mr. Savoie that the piling and pipeline belonged to ChevronTexaco.  Under oath at his deposition, however, Mr. Champagne denied these allegations.  The ChevronTexaco representatives subsequently took the piling to the ChevronTexaco camp in the Caillou Island Field.  Three years have passed and the piling can no longer be found.

The Plaintiffs initially filed suit in the 32nd Judicial District Court, Parish of Terrebonne, Louisiana, on May 5, 2004.  The Plaintiffs claim property damage and personal injury as a result of the incident.  ChevronTexaco removed the case to federal court on May 5, 2004.

ChevronTexaco subsequently sought summary judgment on two separate occasions, arguing that the Plaintiffs had not met their burden of demonstrating ChevronTexaco's ownership and/or control of the underwater objects.  The Court denied these motions because, viewing the facts in a light most favorable to the Plaintiffs, genuine factual issues existed regarding the ownership and control of the objects.  *See* Rec. Doc. 73 & Rec. Doc. 86.

On January 20, 2006, the Plaintiffs amended their complaint to add Poseidon as a Defendant after a civil engineer and spatial analyst employed by ChevronTexaco conducted a database search for all pipelines located within a 2,000 foot radius of the alleged accident location and found a 24" inch pipeline owned by Poseidon.

## II.    MOTIONS FOR SUMMARY JUDGMENT

Poseidon has filed a motion for summary judgment seeking to have the Plaintiffs' claims

---

[1]  The Plaintiff asserts that the accident occurred at either N 29° 4.379 and W 90° 28.129 or N 29° 4.372 and W 90° 28.132.

dismissed.  Poseidon argues that there are no genuine issues of material fact regarding its pilings and pipeline in the area, and therefore it is entitled to judgment as a matter of law.  Poseidon admits that it owns the 24" pipeline and a cluster of pilings in the area that displays signs and navigation aids.  However, Poseidon argues that its pilings and pipeline are still intact today, and therefore could not have been involved in the Mr. Savoie's accident.

ChevronTexaco has also renewed its motion for summary judgment in light of Poseidon's admissions.  Once again, ChevronTexaco argues that the Plaintiffs have failed to demonstrate that ChevronTexaco owned or controlled the underwater objects, and therefore that it is entitled to judgment as a matter of law.

III.   **LAW AND ANALYSIS**

Summary judgment is only granted if the pleadings, depositions, answers to interrogatories, and admissions, together with affidavits show that there is no genuine issue as to any material fact and that the defendant is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56.  When considering a motion for summary judgment, the Court must "review the facts drawing all inferences most favorable to the party opposing the motion."  *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 137 (5th Cir. 2004).  If the party moving for summary judgment demonstrates the absence of a genuine issue of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial."  *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995).

The alleged accident in the instant case occurred in navigable waters, giving this Court admiralty jurisdiction over the case.  *See Branch v. Schumann*, 445 F.2d 175, 177-78 (5th Cir. 1971).  The applicable substantive law is the general maritime law.  Under the general maritime

law, a party will only be liable for damages resulting from a collision between a boat and an obstruction in navigable waters if that party owned, controlled, or placed the obstruction in the navigable waters.  *See Creppel v. Shell Oil Co.*, 738 F.2d 699, 701 (5th Cir. 1984).  Essentially, the United States Court of Appeals for the Fifth Circuit held in *Creppel* that liability can only be imposed upon a party if that party had a legal relationship to, or responsibility for, the obstruction.

The Plaintiff in *Creppel* hit a two and one-half inch pipe while trawling for shrimp, causing his boat to take on water and eventually sink.  There was no doubt that the pipe was attached to land under Shell's mineral lease, and that Shell was aware of this fact.  Nevertheless, the Fifth Circuit held that Shell did not have a "duty to clear its maritime leases of all obstructions *of which it has notice*, regardless of whether it owns or has placed the obstructions there or maintains them."  *Creppel*, 738 F.2d at 701 (emphasis added).

In the present case, Mr. Savoie caught a generic creosote piling in his nets and then allegedly struck an underwater object shortly thereafter.  ChevronTexaco abandoned its mineral lease in the area three years before Mr. Savoie's accident.  Poseidon, however, owns a right-of-way through the area for its pipeline.  Neither Defendant had notice of a creosote piling in the area, nor were the Defendants aware of any other submerged obstructions.  Subsequent investigations have failed to discover any such obstruction.

With respect to the creosote piling, the Plaintiffs have "offered no direct proof" that either Defendant owned or controlled the piling.  *See Creppel*, 738 F.2d at 701.  The Plaintiffs allege that Mr. Champagne told Mr. Savoie that the piling belonged to ChevronTexaco, however Mr. Champagne denied this allegation in his deposition.  Indeed, pilings such as this are

commonly used throughout the Gulf of Mexico.  The piling that found its way into Mr. Savoie's

nets has no identifying marks and could have been negligently or intentionally disposed of in the

area by anyone.  At his deposition, Mr. Savoie testified that he has seen similar pilings on

material barges traveling through the area.  Moreover, the area has been struck by many major

weather events over the past five years and is subject to the ebb and flow of the tide which could

bring broken pilings and other debris from docks, camps, channel markers, or even offshore into

the area where Mr. Savoie alleges he picked up the piling.

It is unknown if the creosote piling was floating adrift in the sea, lying on the water

bottom, or stuck in the ground.  Assuming the piling was unattached when it found its way into

Mr. Savoie's nets, it was most likely permanently attached to the water bottom at one time.

Viewing the facts and inferences in the light most favorable to the nonmoving party, the Court

has previously assumed that the piling was attached to the land under ChevronTexaco's mineral

lease.  However, this assumption does not satisfy the Plaintiffs' burden under *Creppel*.

Moreover, the piling did not cause any damage to Mr. Savoie or his boat.  Rather, the

Plaintiffs allege that Mr. Savoie injured his back as he bent over to remove the piling from his

nets.  The Defendants cannot be held liable for injuries sustained by Mr. Savoie while bending

over to remove flotsam or jetsam that happened to get stuck in his nets but is not attributable to

either Defendant.

As for the unidentified underwater object, the Plaintiffs have similarly failed to satisfy

their burden under *Creppel*.  Two days after Mr. Savoie reported the incident, a dive team

conducted an underwater inspection of the area.  Sweeps for underwater obstructions were

performed, but no obstructions were found.  This case is not like *Gele v. Chevron Oil Co.*, 574

F.2d 243 (5th Cir. 1978), where the Court assumed that a submerged object belonged to Chevron given that Chevron was the exclusive operator of a well-known oil field at the end of the Mississippi River-Gulf Outlet.  Nevertheless, prior to the revelation that Poseidon owned and operated a pipeline in the relevant vicinity, the Court had to assume that the submerged object belonged to ChevronTexaco.  Accordingly, the Court denied ChevronTexaco's first two motions for summary judgment.

However, discovery has now run its course in this case, and it is evident that Poseidon operates the pipeline that the Plaintiffs allege Mr. Savoie struck.  In 1996, the Poseidon pipeline was constructed and buried three and one-half feet below the sea floor.  The water depth along the pipeline in the area of the alleged accident is approximately seven feet deep.  Moreover, Poseidon recently hired a third party to locate and inspect its pipeline.  No defects or other obstructions were found, and the survey revealed that the pipeline still has anywhere from three and one-half to nine feet of mud covering it.  Given that Mr. Savoie's boat draws only three feet, he could not have struck Poseidon's pipeline.

The pipeline that the Plaintiffs allege Mr. Savoie struck therefore resembles the sunken barge that Captain Alvey thought the S.S. Seatrain Ohio hit in Vietnamese waters in 1972.  No barge was ever found, and Captain Alvey's theory was rejected as mere conjecture.  *See Hudson Waterways Corp. v. United States*, 414 F. Supp. 1397, 1405 (S.D.N.Y. 1976).

IV.    **CONCLUSION**

The Plaintiffs have offered no evidence to controvert the Defendants' arguments in this case.  At this stage of the litigation, the Plaintiffs cannot rely on conclusory allegations, unsubstantiated assertions, and scintillas of evidence.  The Court cannot "assume that the

[Plaintiffs] could or would prove the necessary facts at trial." *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  Indeed, "[t]here is no burden on the defendant to present convincing alternative versions of the case in order to rebut an unconvincing version presented by [the] plaintiff[s]." *Universe Tankships, Inc. v. United States*, 388 F. Supp. 276, 287 (E.D. Pa. 1974).

For the foregoing reasons, the Defendants' motions for summary judgment are GRANTED and the Plaintiffs' claims are hereby DISMISSED WITH PREJUDICE.

New Orleans, Louisiana, this   26th   day of   September   , 2006.

_____
UNITED STATES DISTRICT JUDGE